UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JULIE DALHAUS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.   16-cv-31 |
| ) | |
| WEN BY CHAZ DEAN, INC., ) | |
| GUTHY-RENKER LTD. and ) | |
| GUTHY-RENKER PARTNERS, INC., ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, JULIE DALHAUS, by and through her attorney, ALVIN C. PAULSON, files this Complaint against Defendants, WEN BY CHAZ DEAN, INC., ("WEN"), GUTHY-RENKER LTD., and GUTHY RENKER PARTNERS, INC. (GUTHY-RENKER DEFENDANTS, collectively, "GUTHY-RENKER") (Defendants collectively, "Defendants") and respectfully state as follows:

## NATURE OF THE ACTION

1. Plaintiff seeks redress for misrepresentations and severe injuries to her hair and scalp in connection with the purchase and use of WEN® Pomegranate Cleansing Conditioner ("the Product") designed, manufactured, marketed, sold and distributed by Defendants.

2. The Product remain available for sale to the general public despite Defendants' knowledge they cause serious injuries.  Plaintiff purchased the Product because of false representations that they would clean and condition her hair, leaving her hair smoother, shinier, stronger, fuller, more manageable with no frizz and that the Product would limit or repair damage or potential damage to her as the result of other hair treatments, such as coloring or bleaching or regular heat-based styling.  Defendants failed to disclose to Plaintiff and other

1

consumers that the Product contain an ingredient or combination of ingredients that cause significant hair loss, damage and other injuries upon proper application.

3. One or more of the Product's active ingredients act as a depilatory and caustic agent, either by causing a chemical reaction that damages the hair strand and/or follicle. The effect of this ingredient(s) render the Product dangerous and unsafe for sale as an over-the-counter hair product.

4. Defendants failed to properly warn consumers, including Plaintiff, of the risks and dangers attendant to the use of the Product on their hair and scalp even well after Defendants knew or should have known of their hazards. Defendant continued to conceal the dangers of the Product by failing to appropriately and fully discontinue and recall the Product, by continuing to claim the Product are safe when properly applied, by offering more of the Product to the market and by failing to warn consumers, including Plaintiff, of the dangers attendant to their use.

5. Defendants' acts and omissions in connection with the development, marketing, sales and delivery of the Product, and their failure to discontinue and recall and/or discontinue sale of the Product after learning of their hazards, violates the consumer protection and deceptive trade practices laws of Illinois, breaches Defendants' express and implied warranties to Plaintiff and other consumers, and constitutes negligence and strict liability by the Defendants.

6. Defendants labeled, advertised, promoted and sold the Product, targeting women who wanted smoother, shinier, stronger, more manageable hair with no frizz or who sought to limit or repair damage or potential damage to the hair caused by other hair treatments, such as coloring or bleaching, or regular heat-based styling. Through an extensive marketing campaign, including use of ubiquitous infomercials and television advertising with celebrity testimonials, the Internet and widely circulated popular style and fashion magazines, Defendants made a

number of express warranties to the effect that the Product would clean and condition hair gently, without causing damage to hair and, in fact, would limit or repair damage or potential damage to hair caused by other hair treatments and regular heat-based styling and that the Product were superior to other Product available on the market.  More particularly, Defendants represented that, "[The Product are] gentle enough to use every day and "[aren't] like an ordinary shampoo so you want to use more of it, not less.  You can never use too much!  The more you use, the better the results."

7. Defendants failed to warn Plaintiff, either in their extensive television, print and online marketing of the Product or on the package labeling, that she was at risk of significant hair loss, damage and/or other injuries upon proper application of the Product.

8. Defendants failed to warn Plaintiff of the risks, despite their knowledge shortly after introduction of the Product to the market that consumers were complaining that the Product caused significant hair loss, burning of the scalp and other adverse effects, such as dryness and breaking of the hair.  Not only did Defendants fail to properly warn consumers, including Plaintiff, before she purchased the Product but also failed to discontinue and recall the Product upon learning that they were unsafe for use by consumers, including Plaintiff.

9. As of the date of the filing of this Complaint, Defendants continue to sell the Product.  Moreover, Defendants continue to falsely claim to consumers that the Product are safe and continue to fail to warn consumers of the dangers of the Product even upon proper use.

10. United States consumers, including Plaintiff, reasonably expect that their hair care Product will not cause significant hair loss, damage and other injuries because of defective design and manufacturing, inadequate research and/or due diligence.  In addition, United States consumers expect that the Product will not cause their hair to fall out, break, become dry, change

3

in texture or cause other injuries to their hair and scalp. Further, United States consumers, including Plaintiff, reasonably expect that if Defendants, the companies primarily responsible for developing, manufacturing, marketing, distributing and selling the Product, knew that the Product would or could cause hair loss and other injuries (whether by proper application or by misapplication), they would disclose those risks to consumers immediately, rather than continuing to market and sell the Product.

11.     Defendants failed in their duty to provide consumers, including Plaintiff, with accurate, adequate information, and continued even after learning of the unreasonable risks and hazards of the Product to perpetuate and create a false public perception that there was little or no risk from the use of the Product.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(a) because this is a lawsuit in which over $75,000 is at issue and Plaintiff is a citizen of a state other than Defendants' state of citizenship. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avail themselves of the markets in this District, through the promotion, sale and marketing of the Product in this District.

## PARTIES

14.     Plaintiff, JULIE DALHAUS, is a citizen of Illinois, residing in Fairview Heights, Illinois.

15. Defendant, Wen by Chaz Dean, Inc., is a California corporation with its principal place of business in Los Angeles, California. Defendant may be served through its registered agent, Jeffrey Alan Deane, 6444 Fountain Ave., Los Angeles, CA 90028.

16. Defendant, Guthy-Renker Ltd., is a Delaware corporation with its principal place of business in Santa Monica, California. Defendant may be served through its registered agent, Corporation Service Company d/b/a CSC--- Lawyers Incorporating Service, 2210 Gateway Oaks Dr., Ste. 150N, Santa Monica, CA 95833.

17. Defendant, Guthy-Renker Partners, Inc., is a Delaware corporation with its principal place of business in Santa Monica, California. Defendant may be served through its registered agent, Corporation Service Company d/b/a CSC --- Lawyers Incorporating Service, 2210 Gateway Oaks Dr., Ste. 150N, Santa Monica, CA 95833.

## FACTUAL BACKGROUND

18. Defendants designed, manufactured, marketed, sold and distributed the Product throughout the United States at all times relevant to this Complaint.

19. According to his website, Chaz Dean, the founder of Wen, is a Los Angeles-based hair care stylist who "has a celebrity clientele list that reads like a who's who in Hollywood" and "believes in a natural, healthy lifestyle," "dedicate[ed] to harmony and holistic methods."[1] Dean creates hair care Product, such as and including the Product. His website touts Dean's Product as "groundbreaking" and "a spectacular shift in the way we protect and style our hair."[2] On the website, Dean describes his development of the concept of which the Product are a part:

I was becoming known for healthy hair. I developed the cleansing conditioner concept, and it worked. My very first celebrity client was Nicollette Sheridan, and I worked with several

---

[1] *See* **http**://chazdean.com/aboutChaz/.
[2] *See* **http**://chazdean.com/aboutChaz/about/.

5

actors from the Aaron Spelling shows of the time – Beverly Hills 90210 and Melrose Place. I was able to dramatically improve the condition of their hair, to restore the body, shine and bounce. Everybody took notice [and] wanted that.

*See* http://chazdean.com/aboutChaz/about/ (internal references and quotations omitted).

20. Dean's website further explains that, "[w]ith the success of WEN, [he] became a fixture on television shows . . . speaking about healthy hair and hair transformations. Viewers may also know him from his award winning WEN Hair Care infomercial."[3]

21. Dean, through Wen, at all times relevant to this Complaint designed, manufactured, marketed, sold and distributed the Product jointly with Guthy-Renker. According to its website, Guthy-Renker is "one of the largest and most respected direct marketing companies in the world" and "since 1988 has discovered and developed dozens of well-loved, high quality consumer Product in the beauty, skincare, entertainment and wellness categories."[4] Guthy-Renker credits itself for "moving, award-winning production and marketing campaigns featuring some of today's leading celebrities."[5]

22. By these representations and instructions, Defendants represented and warranted that the Product will produce smoother, shinier, stronger, more manageable hair with no frizz and are particularly helpful to consumers who seek to limit or repair damage or potential damage to hair caused by other hair treatments, such as coloring or bleaching, or regular heat-based styling.

23. Contrary to these express and implied representations, the Product contain one or more active ingredients that act as a depilatory or caustic agent, causing a chemical reaction that damages the hair strand and/or follicle.

---

[3] *See id.*
[4] *See* **http://**www.guthy-renker.com/about/.
[5] *See id.*

24. An average consumer, Plaintiff included, understand these representations to mean the Product are gentle, natural, free from harsh or damaging chemicals, conditioning and safe, and will not cause hair loss and other injury upon proper (or improper) application.

25. Instead, Plaintiff and other consumers reasonably expect a warning regarding any potential hazard to consumers, especially because the Food, Drug and Cosmetic Act regulations provide that cosmetics that may be hazardous to consumers must bear appropriate warnings. See htt://www.fda.gov/Cosmetics/CosmeticLabelingLabelClaims/default.htm.

26. Contrary to the Food, Drug and Cosmetic Act regulations, the Product failed to provide adequate directions for safe use, although Defendants knew or should have known the Product were unsafe even if used correctly.

27. In fact, many consumers who suffered hair loss and other serious injuries as a result of the Product complained to Defendants directly and online about their experience. Many more did not initially associate their injuries with use of the Product, it being so unexpected that a product sold over-the-counter by Wen, a company that claims to have a "holistic" and "healthy" focus, could be dangerous. Many of these victims assumed their hair loss was the result of a serious illness and sought medical treatment. The situation caused them and their loved ones terrible concern and expense.

28. One or more of the Product' active ingredients act as a depilatory or caustic agent, either by causing a chemical reaction that damages the hair strand and/or follicle. The effect of this ingredient(s) render the Product dangerous and unsafe for sale as an over-the-counter hair product.

29. Designing, manufacturing and providing a direct-to-consumer hair conditioning/care Product with these ingredient(s) is unreasonably dangerous and unsafe to

consumers, especially when marketed as gentle and safe to use every day and given Defendants' instructions to consumers to use large amounts of the Product and to leave the Product in their hair for long, even indefinite, periods of time.

30. Prior to Plaintiff's purchase of the Product, Defendants were aware or should have been aware that the Product contained an inherent defect(s) that caused significant hair loss and other injury upon proper application and that any instructions and warnings provided with the Product were wholly insufficient. Defendants were unaware of this because they failed to perform pre- and post-marketing safety testing as required by industry standards and best practices.

31. Defendants knew, or but for their reckless indifference would have known, prior to Plaintiff's purchase of the Product that they would continue to receive complaints of hair loss and other injuries attributed to the Product. Based on their experience, Defendants knew or should have known that even if they diligently investigated the problem, it would be difficult if not impossible to remediate the problem.

32. Defendants knew, or but for their reckless indifference would have known, that: (a) the risk of hair loss and other injury was substantial, (b) users of the Product were unaware of that substantial risk, and (c) those users had a reasonable expectation that Defendants would disclose the risks and discontinue sale of the Product.

33. Despite such knowledge, Defendants did not disclose to prospective purchasers, before or after learning of the Product' hazards, that there was a substantial risk of hair loss and other injury associated with use of the Product. Defendants instead continued to claim the Product were safe, while concealing or attempting to conceal or control all the adverse reports filed by consumers.

## FACTS RELATING TO PLAINTIFFS

34. Plaintiff, JULIE DALHAUS, learned of the Product through Defendants' various advertisements. Plaintiff's daughter purchased the Product in the WEN® Pomegranate Cleansing Conditioner variety on July 6, 2013, based on representations by the Defendants that the Product would produce smoother, shinier, stronger, more manageable hair with no frizz and were particularly helpful to consumers who sought to limit or repair damage or potential damage to the hair caused by other hair treatments, such as coloring or bleaching, or regular heat-based styling. Ms. Dalhaus used the Product as instructed. Nevertheless, she has suffered extreme hair loss and damage.

## COUNT I

**(Breach of Express Warranty)**
**(Against all Defendants)**

35. Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

36. Plaintiff formed a contract with Defendants at the time they purchased the Product. The terms of that contract include the promises and affirmations of fact made by Defendants on the Product' packaging and through marketing and advertising. This marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and Defendants.

37. Defendants, through their advertising and packaging, create express warranties that the Product were safe, effective, more effective than other Product on the market, sulfate-free hair cleansing and/or conditioning treatments that limit or repair damage caused by other hair treatments.

38. All conditions precedent to Defendants' liability under this contract were performed by Plaintiff when she purchased and used the Product.

39. Defendants breached express warranties about the Product and their qualities because their statements about the Product were false and the Product do not conform to their affirmations and promises. Plaintiffs would not have purchased the Product had they known the true nature of the Product and the misstatements regarding what the Product are and what they contained.

40. As a result of Defendants' breach of warranty, Plaintiff has been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases, including the cost to repair her hair loss and damage.

## COUNT II

### Breach of Implied Warranty of Merchantability
### 810 Ill. Comp. Stat. 5/2-314 and 5/2A-212
### (Against all Defendants)

41. Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

42. At all times relevant hereto, there was a duty imposed by law which requires that a manufacturer or seller's product be reasonably fit for the purposes for which such Product are used, and that product be acceptable in trade for the produce description.

43. Notwithstanding the aforementioned duty, at the time of delivery, the Product sold to Plaintiff were not merchantable because they contain defect(s) that cause hair loss and other injuries upon proper application and do not otherwise perform as requested.

44. Defendants were notified that the Product were not merchantable within a reasonable time after the defect manifested to Plaintiff and other consumers.

45. As a result of the non-merchantability of the Product, Plaintiff and other consumers sustained damages.

## COUNT III

### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 ILCS 505/1
### (Against all Defendants)

46. Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

47. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

48. All defendants are each a "person" within the meaning of 815 ILCS 505/1(c).

49. Plaintiff, as purchaser of the Product, is a consumer within the meaning of 815 ILCS 505/1(e).

50. As detailed above, Defendants, through its advertisements and packaging, violated the Illinois CFA by using deception, fraud, false promise and misrepresentation in connection with the marketing of the Product, as alleged.

51. Defendants also knowingly concealed, suppressed, and consciously omitted material facts to Plaintiff and other consumers knowing that consumers would rely on the advertisements and packaging and Defendants' uniform representations to purchase the Product.

52. Once the defects in the Product and their tendency to cause hair loss and other injuries despite proper application (or based upon foreseeable misapplication) became apparent to Defendants, consumers (Plaintiff) were entitled to disclosure of that fact because a significant risk of hair loss and damage would be a material fact in a consumer's decision-making process, and, without Defendants' disclosure consumers would not necessarily know that there is such a risk.

53. Defendants intended that Plaintiff and other consumers would rely on the continued deception by purchasing the Product, unaware of these material facts and omissions. They knew that customers would continue to rely on the representations and their silence as to any known risk of hair loss and other injuries as evidence that the Product were safe and would perform as represented. This conduct, and Defendants' breaches of express and implied warranties, constitutes consumer fraud within the meaning of the Illinois CFA.

54. Defendants' material non-disclosure constitutes an unconscionable commercial practice, deception, fraud, false promise, misrepresentation and/or omission of material facts as to the nature of the goods in violation of the Illinois CFA.

55. In addition, upon information and belief, Defendants removed from the Internet and social media sites unfavorable reviews of the Product that would have warned consumers that the Product are dangerous. Similarly, also upon information and belief, Defendants paid for false and misleading blogging about the Product on the Internet and social media sites but failed

to attribute the false and misleading statements to Defendants or as advertising. These acts also constitute a violation of the Illinois CFA.

56. Defendants are the producing and proximate cause of Plaintiff's injuries.

## COUNT IV

### Violation of the Illinois Food, Drug and Cosmetic Act ("IFDCA")
### 410 ILCS 620/1
### (Against all Defendants)

57. Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

58. The Product are "cosmetics" within the meaning of the IFDCA. 410 ILCS 620/2.6.

59. The IFDCA provides:

> If an article is alleged to be misbranded because the labeling is misleading or if an advertisement is alleged to be false because it is misleading, then in determining whether the labeling or advertisement is misleading, there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, sound or any combination thereof, but also the extent to which the labeling or advertisement fails to reveal material facts in the light of such representations or material facts with respect to consequences which may result from the use of the article to which the labeling or advertisement relates under the conditions of use prescribed in the labeling or advertisement thereof or under such conditions of use as are customary or usual.

410 ILCS 620/2.11.

60. The IFDCA prohibits "[t]he dissemination of any false advertisement." 410 ILCS 620/3.5.

61. As detailed above, Defendants, through its advertisements and packaging, used deception, fraud, false promise and misrepresentation in connection with the marketing of the Product, as alleged.

62. Defendants also knowingly concealed, suppressed and consciously omitted material facts to Plaintiffs and other consumers knowing that consumers would rely on the advertisements and packaging and Defendants' uniform representations to purchase the Product.

63. Once the defects in the Product and their tendency to cause hair loss and other injuries despite proper application (or based upon foreseeable misapplication) became apparent to Defendants, consumers (Plaintiff) were entitled to disclosure of that fact because a significant risk of hair loss and damage would be a material fact in a consumer's decision-making process, and, without Defendants' disclosure consumers would not necessarily know that there is such a risk.

64. Defendants intended that Plaintiff and other consumers would rely on the continued deception by purchasing the Product, unaware of these material facts and omissions. They knew that customers would continue to rely on the representations and their silence as to any known risk of hair loss and other injuries as evidence that the Product were safe and would perform as represented. This conduct constitutes false advertising within the meaning of the IFDCA.

65. Defendants' material non-disclosure constitutes deception, fraud, false promise, misrepresentation and/or omission of material facts as to the nature of the goods in violation of the IFDCA.

66. In addition, upon information and belief, Defendants removed from the Internet and social media sites unfavorable reviews of the Product that would have warned consumers

that the Product are dangerous. Similarly, also upon information and belief, Defendants paid for false and misleading blogging about the Product on the Internet and social media sites but failed to attribute the false and misleading statements to Defendants or as advertising. These acts also constitute a violation of the IFDCA.

67. Defendants are the producing and proximate cause of Plaintiff's injuries.

## COUNT V

**Negligence and/or Gross Negligence**
**(Against all Defendants)**

68. Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

69. Defendants owed Plaintiff a duty to use due care in their development, testing, planning, design, marketing and sale of the Product offered for use by consumers.

70. Through their failure to exercise due care, Defendants breached this duty by producing, processing, manufacturing, distributing and/or offering for sale the Product in a defective condition that was unsafe for unsupervised use at home by consumers.

71. Defendants breached their duty of care to Plaintiff by failing to use sufficient quality control, perform adequate research or testing, proper manufacturing, production or processing and failing to take sufficient measures to prevent the Product from being offered for sale in an unsafe and hazardous form.

72. Defendants further breached their duty of due care by failing to properly and adequately inform consumers once safety concerns, including hair loss and other injuries, were brought to the Defendants' attention, and further breached their duty of care by failing to fully and appropriately discontinue the sale of and recall the Product.

73. Defendants knew, or in the exercise of reasonable care should have known, that the Product present an unacceptable risk to consumers, and would result in damages that were foreseeable and reasonably avoidable.

74. As a direct and proximate result of Defendants' above-referenced negligence and/or gross negligence, Plaintiff has suffered and is entitled to recover damages, both compensatory and punitive.

## COUNT VI

### Strict Liability
### (Against all Defendants)

75. Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

76. Defendants produced, manufactured, designed, marketed, distributed and/or sold the Product that were defective in design or formulation in that the Product are unreasonably dangerous and the foreseeable risks of harm exceed the benefits associated with the design or formulation.

77. Defendants researched, produced, manufactured, designed, marketed, distributed and/or sold the Product that were defective due to inadequate warning, testing, study and/or reporting regarding the results of such efforts.

78. Defendants produced, manufactured, designed, marketed, distributed and/or sold the Product that are defective due to inadequate post-market warning or instruction because, after Defendants knew or should have known of the risk of injury from the Product. Defendants failed to immediately provide adequate warnings to Plaintiff and the public.

79. As the direct and legal result of the defective condition of the Product as produced, manufactured, designed, marketed, distributed and/or sold by Defendants, and of the

negligence, carelessness, other wrongdoing and actions of Defendants described herein, Plaintiff suffered damages.

## ATTORNEYS' FEES, EXPENSES AND COSTS

80. The foregoing paragraphs are incorporated by reference.

81. Plaintiff has been forced to secure the assistance of counsel to protect her legal rights and mitigate her damages as a result of the Defendants' wrongful conduct.

82. Having made proper presentment and provided actual and sufficient notice of her claim to Defendants, Plaintiff seeks recovery of her reasonable attorneys' fees, expenses and costs pursuant to all applicable statutes, regulations and agreements.

## PRAYER

83. WHEREFORE, Plaintiff prays for Judgment against Defendants as follows:

    1. For an award of actual and consequential damages according to proof;

    2. For an award of punitive damages according to proof;

    3. For an award of reasonable attorneys' fees and costs incurred herein; and

    4. For all other relief to which they may be justly entitled.

## PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS.

Respectfully submitted,

**ALVIN C. PAULSON, ATTORNEY AT LAW**

By:    s/ Alvin C. Paulson_____
          Alvin C. Paulson
          No. 6193202

5111 West Main Street
Belleville, Illinois 62226
(618) 235-0020
(618) 235-8558 - Fax
acp@acplawfirm.com

## CERTIFICATE OF SERVICE

      I hereby certify that on **January 12, 2016,** I electronically filed this document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

                            s/ Alvin C. Paulson
                            Alvin C. Paulson
                            Attorney at Law.
                            5111 West Main Street
                            Belleville, IL 62226
                            (618) 235-0020
                            fax – (618) 235-8558
                            ARDC #6193202